### LAMBERT v. HOPE et al.

(Court of Appeals of District of Columbia. Submitted May 13, 1920. Decided June 2, 1920.)

No. 1315.

1. Patents ⬦118—Nothing gained by patent issued to individual while joint application was copending.

Where a joint application for a patent was filed November 29, 1915, and thereafter one of the applicants filed an individual application on May 8, 1916, which inadvertently went to patent June 5, 1917, while the joint application was copending, the individual applicant gained nothing by the issue of the patent to him.

2. Patents ⬦91 (4)—Award of priority as to an invention relating to drying kiln proper under evidence.

In a proceeding in the Patent Office involving invention relating to an apparatus for drying wood veneer, evidence held insufficient to warrant a decision in favor of the junior party, and an award of priority to the original applicants was proper.

Appeal from Commissioner of Patents.

Proceeding between Eric Lambert and John F. Hope and another in the Patent Office, to obtain a patent for a drying kiln for drying wood veneer. From an award of priority to the latter, the former appeals. Affirmed.

Chas. C. Stauffer, of Washington, D. C., for appellant.

Hervey S. Knight, of Washington, D. C., and Arthur C. Brown, of Kansas City, Mo., for appellees.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

VAN ORSDEL, Associate Justice. This appeal is from an award of priority to appellees Hope and Lambert for an invention relating to an apparatus for drying wood veneer, consisting of a rectangular housing, in which the material to be dried is placed, and heated air, acting directly upon the material, is drawn through the housing by means of a radiator in one end of the housing and a fan in the other. The single count of the issue reads as follows:

"A dry kiln comprising a rectangular shaped housing, a radiator located in one end of said housing forming an end way thereof and provided with openings through which air may be drawn, the opposite end of said housing closed by an end wall, and an exhaust fan connecting with the interior of said housing through said wall."

[1] It appears that Hope and Lambert filed a joint application November 29, 1915, and thereafter Lambert filed an individual application on May 8, 1916, which inadvertently went to patent June 5, 1917, while the joint application was copending. Lambert gains nothing by the issue of the patent to him, and, being the junior party, and in the position of assailing a prior application in which he joined as joint inventor, the burden is heavily upon him.

In view of the prior art, the Commissioner expresses doubt as to the disclosure of a patentable invention, but by reason of the issuance of the patent to Lambert sustains the interference on the authority of In re Orcutt, 32 App. D. C. 345. On this point the Commissioner said:

"The small advance over the prior art in accordance with this decision shall be assumed for the purposes of this controversy to be patentable; but the very small advance should be kept in mind in reading the testimony. For example, Lambert criticizes Hope because he (Hope) does not state specifically the feature or features he contributed or suggested to the joint invention of Hope and Lambert. In view of these references (patent to Zappert of May 19, 1896, and patent to Soverbill of October 10, 1893), it is questioned if Lambert can specifically state what novel features he has added to the prior art, and, as he is entitled to claim only what is novel as his invention, his testimony as to what he invented must be weighed in the light of the prior art."

[2] The testimony has taken a wide range, but, considering only that material to the very narrow advancement over the prior art, we find no basis upon which the contention of Lambert can be sustained. He totally fails in his attempt to carry reduction to practice back to an earlier structure of 1894. In his effort to eliminate Hope from inventive co-operation in the present 1915 structure, he stands alone; while Hope is corroborated directly by his father, and indirectly by Brown, the attorney, who prepared the joint application.

Without stopping to review the somewhat voluminous testimony, we fully agree with the conclusion of the Commissioner that—

"Lambert joined Hope in executing the joint oath that they were joint inventors. As against Lambert's statement that this oath was fraudulently obtained, the two Hopes and Brown, the latter Lambert's own witness, deny this. The joint oath was not repudiated until Hope and Lambert quarreled, when Lambert filed his sole application. There is not a word of testimony to show that Lambert, instead of Hope and Lambert, invented anything novel over the prior art."

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.

Affirmed.