### JOSEPH ROSS & CO. v. WIGDER.

(Circuit Court of Appeals, Third Circuit. July 5, 1923.)

No. 2983.

**1. Patents ⊕⇒92—Cannot be granted to one of two joint inventors.**

If the novelty of the invention was the joint work of two individuals, a valid patent could not be granted to one of them only.

**2. Patents ⊕⇒328—1,255,819, claims 3 and 4, for a file, held void, because patentee was not inventor.**

The Moffat patent, No. 1,255,819, for a file, claims 3 and 4, *held* invalid, because the evidence showed that the patentee was not the inventor of the novel feature therein, the use of plastic tin-plating on the files.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in equity by Joseph Ross & Co. against Bernard Wigder for infringement of a patent. Decree for defendant, and plaintiff appeals. Affirmed.

Gifford, Bull & Scull, of New York City (George F. Scull, of New York City, of counsel), for appellant.

Drury W. Cooper and George D. Richards, both of New York City, and William Greenfield, of Newark, N. J., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and McKEEHAN, District Judge.

BUFFINGTON, Circuit Judge. In the court below the plaintiff, the owner by assignment of patent No. 1,255,819, granted February 5, 1918, to William L. Moffat, for a file, charged Bernard Wigder with infringement of the third and fourth claims thereof. On final hearing that court found the claims invalid, for the reason, inter alia, that Moffat was not the real inventor of the file, whereupon this appeal was taken.

After study of the proofs, we find no error in such holding, and on that ground we affirm the decree. The case concerns a manicure file, and the proofs show that Moffat, the patentee, had in 1912 charge of the sale of the manicure files produced by the plaintiff company, which files were either plain steel or nickel or silver-plated. With a view to improving them, he conceived the idea of plating them with some other substance, as plain files rusted and the plated ones tarnished.

The plaintiff had an electro-plating equipment, and Moffat tried various methods of plating "nickel, and copper under nickel, silver, and

copper under silver," to improve such files, but without success. He says he then conceived the idea of using tin for plating, as it was of a bright color and did not corrode. As Moffat knew nothing about practical electro-plating, he says he went to one King, who was a recognized authority in that line, and who was employed by Hanson & Van Winkle Company, the firm from which Moffat's firm bought all their plating supplies. He says he took with him some unplated steel files, and to quote Moffat's own account—

"asked him whether it was possible to plate with tin. I knew that the ordinary tin was sheet iron dipped in molten tin, and I did not know whether tin could be applied electrolytically. He said they could plate it with plastic tin, so I left this quantity of files with Mr. King."

Moffat says the files were subsequently tin-plated by King and returned to him, but that when they were buffed the tin wore off the buffed part, and left the steel in its original unplated condition. Moffat says he was greatly disappointed, but that in thinking over it he concluded to first nickel-plate the files and then tin plate over the nickel; that he called up King by phone and asked him whether he could plate tin on top of nickel and, being told he could, he thereupon sent King some nickel-plated files, accompanied by a letter, and on the return of the files it was found the rasp or file part took a fine silvery appearance from the tin, and while the tin-plating came off the buffed ends, the nickel plating was left in fine shape. Asked the question:

"Q. As a matter of fact, how did you know, when the first batch came back, they were tin-plated on steel. How did you know it was tin on them, except that Mr. King told you? A. I didn't. Q. And when the second lot that you have testified about, with the tin-plating on the nickel came back, you still didn't know what it was, except as he told you? A. That is right."

[1] A study of Moffat's story by itself leaves one under the decided impression that the successful tin-plating of files was the joint work of Moffat and King in the steps following: First, the suggestion of Moffat that tin-plating, about which he knew nothing, should be tried; second, the suggestion of King that, not tin-plating, which Moffat suggested, but plastic tin-plating, which alone made the file a success, be used; and, third, the suggestion of Moffat that the tin-plating be done over nickel-plating. And if the novelty of the patent was the joint work of both, of course, a valid patent could not be granted to one.

[2] But the case does not end here, for, taken as a whole, the testimony leads us to the conclusion reached by the trial court, as noted above, namely, that "whatever was invented was invented by King." In that connection we here note that the plastic tin-plating of nickel-plated files imparts to the file part which is not buffed a white silvery appearance and the plating does not blunt the points of the file or fill up the interstices. Not only do the proofs show that this result came from King, but that it was made possible by his discovery of plastic tin, a thing alone which Moffat knew nothing about. In that regard the proof is that, in the use of tin as a plating agency, a spongy deposit gathered on the article. That this had to be rubbed off and the article again tin-plated and again rubbed off, and the process repeated until the tin plating required was secured. But not only did the process require this repetition, but when the coating was finally secured the

coating was not silvery in color, but one four times or shades darker, so that, accepting Moffat's own account of his original idea of tin-plating, it is quite clear such tin-plating would have produced nothing of worth, for it was the rejection of Moffat's tin-plating and the substitution of King's plastic tin-plating that produced the file here involved. The uncontradicted testimony is that King suggested this latter process, and such suggestion came from his own knowledge, and indeed his earlier discovery of the art of plastic tin-plating, which was that, if the electrolyte used for ordinary tin-plating was first frozen and then thawed, and warmed to say 120 to 140 degrees, and then used for plating, the plating by one operation would come out finished, virgin white and without sponge. But not only is there this uncontradicted proof that what made these files of commercial value thus came from King, but his testimony is that the whole suggestion of using tin in plating the files came from him (King) and not from Moffat. King's story, referring to Moffat, is:

"He said, 'That would be of a bluish white, and I don't know as that would answer.' So, in thinking this over, I said, 'Well, now, we have a tin that is a very white tin that I think will answer your purpose', and I showed him samples, and he wondered then how it took on the files. I says, 'The only way to find out how it looks on the files is to send me half a dozen or a dozen files and nickel-plate them so that I won't have the trouble of nickel-plating them here.' So he did that."

As confirming his story, King produced the letter dated the next day and printed in the margin,[1] and he also produced the pocket samples of plastic tin-plating which he then showed Moffat.

Assuming, then, for present purposes, but without deciding, that the claims in controversy are patentable, we are of opinion that Moffat was not the sole inventor thereof, and the decree of the court dismissing the bill is therefore affirmed.

[1] "Joseph Ross & Co.,

"Manufacturers of Steel Specialties.

"Established 1875.                              Irvington, N. J., Jan. 23, 1917.

"The Hanson & Van Winkle Co., Newark, N. J.—Gentlemen: Att. Mr. King. Confirming our telephone conversation of to-day, we inclose one-half dozen nail files which we are desirous of plating, so as to obtain a very white color. Silverplating will not answer as it tarnishes. Will you please plate these files as you suggested with plastic tin, and return them to us without doing any buffing, as we are desirous of buffing them ourselves. We have purposely sent you files which are a bad color, so that we can see the result obtained under the worst possible conditions. We will call you up to-morrow Wednesday afternoon to hear as to the results obtained.

"Yours very truly,                                    Joseph Ross & Co."